Slip Op. 10- 24

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

---

|  |  |
|---|---|
| | : |
| EHWA DIAMOND INDUSTRIAL CO., LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Before:  R. Kenton Musgrave, Senior Judge |
| | :    Court No. 09-00508 |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| DIAMOND SAWBLADES | : |
| MANUFACTURERS' COALITION, | : |
| | : |
| Defendant-Intervenor. | : |

---

### OPINION AND ORDER

[Granting Defendant's motion for correction of ministerial errors; staying all other court proceedings in this matter until issuance of a conclusive court decision in *Diamond Sawblades Manufacturers' Coalition v. United States*, Slip Op. 09-5.]

Dated: March 11, 2010

*Akin Gump Strauss Hauer & Feld LLP* (*Jarrod M. Goldfeder*), for the plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Delisa M. Sanchez*); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (*Joanna V. Theiss*), for the defendant U.S. Department of Commerce.

*Wiley Rein LLP (Daniel B. Pickard, Maureen E. Thorson)* for the defendant-intervenor.

Musgrave, Senior Judge:  Before the court is a motion submitted by Defendant United States Department of Commerce, International Trade Administration ("Commerce" or "the Department") seeking leave from the Court to issue and publish an amended determination that incorporates corrections to certain alleged ministerial errors in the dumping margin calculation set forth in its final affirmative antidumping determination regarding diamond sawblades and parts thereof imported from the Republic of Korea.  *See* Def.'s Mot. for Leave to Publish Am. Final Determ. Correcting Ministerial Errors ("Def.'s Mot."); *Notice of Final Determination of Sales at Less than Fair Value and Final Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea*, 71 Fed. Reg. 29310 (May 22, 2006) ("*Final Results*"). Plaintiff Ehwa Diamond Industrial Co., Ltd., ("Ehwa") consents to the motion; Defendant-Intervenor Diamond Sawblades Manufacturers' Coalition ("DSMC") opposes the motion on several grounds. Def-Int's Opp'n to Def.s' Mot. for Leave to Amend Final Determ. ("Def-Int's Opp'n").  For the reasons set forth below, the motion will be granted.

## I.  Background

Commerce published the *Final Results* on May 22, 2006.  The *Final Results* differed from the preliminary determination in several respects that are relevant to this matter.  First, contrary to its preliminary findings, Commerce determined that respondents Ehwa and Shinhan should not be "collapsed" into a single entity and instead treated them as separate entities with different dumping margins.  *See Final Results*, 71 Fed. Reg. at 29312; Issues and Decision Memorandum ("Decision Mem."), Pub. R. Doc. 529 at 51.  Second, the weighted average dumping margins were revised upward from 11.25% to 12.76% for Ehwa, from 11.25% to 26.55% for Shinhan, and 16.39%

for the "all others" rate, which had been previously set at 10.25%. *Final Results*, 71 Fed. Reg. at

29312. *See Notice of Preliminary Determination of Sales at Less Than Fair Value, Postponement*

*of Final Determination, and Negative Preliminary Critical Circumstances Determination: Diamond*

*Sawblades and Parts Thereof from the Republic of Korea*, 70 Fed. Reg. 77135 (Dept. Commerce,

Dec. 29, 2005) ("*Preliminary Results*"). Finally, the Department found that, due (at least in part) to

the higher dumping margins, "critical circumstances" existed for Shinhan and for the "all others"

category of companies, triggering the 90-day "retroactive" suspension of liquidation pursuant to 19

U.S.C. § 1673d(c)(4)(B). *Final Results*, 71 Fed. Reg. at 29312.

      Shortly after the publication of the *Final Results*, Ehwa and Shinhan submitted, in

compliance with the Department's regulations, ministerial error comments alleging, among other

things, that the dumping margin calculation was incorrect because Commerce had inadvertently

failed to allow for a constructed export price ("CEP") offset in its calculations for Ehwa and

Shinhan. *See* May 24, 2006 Ministerial Error Comments, Pub. R. Docs. 542, 543. In rebuttal, then-

petitioner DSMC argued that the Department's failure to include a CEP offset was not a ministerial

error because the lack of analysis in the *Final Results* indicated that "Commerce did not analyze

whether Ehwa or Shinhan are entitled to . . . a CEP offset adjustment as separate entities." May 30,

2006 Ministerial Error Reply, Pub. R. Doc. 545.

      In a June 28, 2006 memorandum to the Acting Director, a senior International Trade

Compliance Analyst concluded that the Department had indeed made a ministerial error with respect

to Ehwa and Shinhan's CEP offset, and recommended that the error be corrected. *Ministerial*

*Allegations Mem.*, Pub. R. Doc. 547 at 2, 4. The analyst explained that "given that the preliminary

determination analysis was based upon Shinhan and Ehwa's individual selling functions, and given that no information or argument was submitted subsequent to the preliminary determination to demonstrate otherwise, we find that a ministerial error occurred . . . ." Pub. R. Doc. 547 at 2-3.

However, two subsequent events prevented Commerce from implementing the recommended corrections. First, on July 11, 2006, the International Trade Commission ("ITC") published in the Federal Register its final determination that the domestic diamond sawblade industry was not materially injured or threatened with material injury by reason of the subject imports. *See Diamond Sawblades and Parts Thereof from China and Korea*, Investigation Nos. 731-TA-1092 and 1093 (Final), 71 Fed. Reg. 39128 (ITC July 11, 2006). Accordingly, and pursuant to the Department's own regulations, the antidumping investigation terminated automatically on that date. *See* 19 C.F.R. § 351.207(d) (2009) (stating that "an investigation terminates automatically upon publication in the Federal Register" of negative ITC determination). *See also* Customs Telex, Pub. R. Doc. 553. Second, as noted by the defendant, DSMC initiated a challenge to the *Final Results* on July 25, 2006 (*see Diamond Sawblades Manufacturers' Coalition v. United States*, Court No. 06-00248), which divested Commerce of jurisdiction over the matter.

On October 12, 2006, DSMC's Court No. 06-00248 challenge to the *Final Results* was stayed pending the outcome of Court No. 06-00247, DSMC's parallel action contesting the ITC's negative-injury determination. *See* October 12, 2006 Stay Order, Court No. 06-00248. The challenge to the ITC determination is not yet resolved. After a remand and subsequent reversal by the ITC on the question of threat-of-material-injury, the court issued a final decision sustaining the ITC's (now affirmative) remand determination on January 25, 2009. *Diamond Sawblades*

*Manufacturers' Coalition v. United States*, 33 CIT __, Slip Op. 09-5 (*appeal docketed*, Oct. 15, 2009; *argued* Feb. 2, 2010) ("*Diamond Sawblades II*"). Yet because *Diamond Sawblades II* is now pending appeal before the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), the conclusive outcome of that case has not been determined. Because the outcome of that case has the potential to obviate Ehwa's current challenge to the *Final Results*, the court will stay the merits adjudication of this action until issuance of a final and conclusive decision in that case.

Pursuant to the mandamus relief granted in *Diamond Sawblades Mfrs.' Coalition v. United States*, 33 CIT __, 650 F. Supp 1331 (2009) (*appeal docketed*, Oct. 15, 2009) ("*Diamond Saawblades III*"), Commerce issued and published antidumping duty orders and ordered the collection of cash deposits on imports of subject merchandise. *See Diamond Sawblades and Parts Thereof From the People's Republic of China and the Republic of Korea: Antidumping Duty Orders*, 74 Fed. Reg. 57145 (Dep't Commerce Nov. 4, 2009). Accordingly, Ehwa, as well as two other plaintiffs have initiated challenges to the *Final Results* pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II). *See Shinhan Diamond Industrial Co., Ltd., v. United States,* (Court No. 09-00509) and *Hyosung D&P Co., Ltd., v. United States*, (Court No. 09-00510). In all four actions that challenge the *Final Results* the government has filed parallel motions for leave to issue an amended determination correcting ministerial errors; all but DSMC have consented to the motion.

DSMC opposes the motion on the grounds that (1) the alleged errors are not ministerial; (2) the defendant has failed to show good cause for making the corrections; and (3) the balance of hardships are in DSMC's favor, because the merits of the case will reveal that the cash

deposit rate is "already lower than it should be" and that even if it is determined otherwise, any excess cash deposits would ultimately be returned.  Def-Int's Opp'n at 2, 5, 6.

## II.  Discussion

### A.

The court's jurisdiction over this matter is derived from 28 U.S.C. 1581(c) (2006). The term "ministerial error" is defined both in statute and regulation as "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which the Secretary considers ministerial." 19 U.S.C. § 1623d(e) (2006); 19 C.F.R. § 351.224(f) (2009).  The power of an administrative agency to correct its own ministerial errors is presumed and considered analogous to the power of a court to correct ministerial errors set forth in Federal Rule of Procedure ("FRCP") Rule 60(a).  *American Trucking Ass'n v. Frisco*, 358 U.S. 133, 145 (1958).  In this case, Congress expressly delegated that power to the Department by the enactment of section 1333 of The Omnibus Trade and Competitiveness Act of 1988 (codified as 19 U.S.C. § 1673d(e)).

However, once a lawsuit has been commenced in this Court, Commerce is no longer authorized to amend its determination.  *See* 28 U.S.C. § 1581(c).  As the *Zenith* Court explained, "once [this] court's exclusive jurisdiction has been invoked, Commerce may correct clerical errors only with the court's prior authorization."  *Zenith Electronics Corp. v. United States*, 884 F.2d 566, 561 (Fed. Cir. 1989).  The "prior authorization" requirement announced in *Zenith* is also analogized from FRCP Rule 60(a), which provides that, once an appeal has been docketed in the appellate court, clerical mistakes may only be corrected "with leave of the appellate court."  FRCP Rule 60(a);

USCIT Rule 60(a). Without the court's authorization, Commerce would be left to correct the errors only if the judicial review process results in a remand to the agency that specifically or implicitly contemplates such correction rather than through the procedure contemplated by section 1673d(e). *See NTN Corp v. United States*, 32 CIT __, 587 F. Supp.2d 1313 (2008).

On the other hand, "it is axiomatic that fair and accurate determinations are fundamental to the proper administration of our dumping laws[;] [c]onsequently, courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination." *Koyo Seiko Co. v. United States*, 14 CIT 680, 682, 746 F. Supp. 1108, 1110 (1990). Moreover, where, as here, Congress has provided a specific mechanism for the correction of ministerial errors, the enactment of those provisions may be interpreted to "indicate[] a legislative preference for determinations that are factually correct." *Koyo Seiko*, 14 CIT at 683, 746 F. Supp. 2d at 1111. Accordingly, it follows that allowing correction of a ministerial error contained in a dumping margin calculation would further the congressional purpose underlying 19 U.S.C. § 1673d(e).

The decision of whether to allow correction of ministerial errors is left to the court's discretion. In this Court, that determination has generally turned on whether the proposed correction would be prejudicial or procedurally unfair to one of the parties. *See, e.g.*, *NTN*, 587 F. Supp.2d at 1313. However, where the issue is contested, the court must first determine whether the error described by the defendant's motion is accurately characterized as ministerial; in which case the court will uphold that characterization if it is supported by substantial evidence of record. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *American Trucking*, 358 U.S. 133 (reversing decision of district court

on the ground that substantial evidence supported Interstate Commerce Commission's finding that an error was inadvertent and ministerial).

In the context of Rule 60(a), whether the alleged error is truly ministerial is generally the only question before the court. In that regard, it has been observed that a ministerial error "encompasses only errors mechanical in nature, apparent on the record, and not involving an error of substantive judgment," or includes only "mindless and mechanistic mistakes [and] minor shifting of facts." *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129-130 (3d Cir. 2005) (describing ministerial errors in a Rule 60(a) analysis) (internal quotes and citation omitted). Although the expansive final clause contained in definition of "ministerial error" set forth in section 1623d(e) (". . . and any other similar type of unintentional error which the Secretary considers ministerial") may indicate a broader scope than Rule 60(a), the definition cannot be seen as open ended; mistakes of law or mistakes that require "cerebration or research into the law or planetary excursions into facts" are not reasonably viewed as ministerial errors. *Pfizer*, 422 F.3d at 130 (citing *In re W. Tex. Mktg.*, 12 F.3d 497, 504 (5th Cir. 1994)).

The additional question of whether allowing the correction will result in procedural unfairness or prejudice appears limited to the context of administrative law. Courts have disallowed ministerial corrections where doing so violates statutorily-mandated procedural requirements (*see Utility Solid Waste Activities Group v. E.P.A.*, 236 F.3d 749 (D.C. Cir. 2001) (setting aside EPA Rule amendment on the ground that rule correction, even if ministerial, required proper notice and comment procedure)); where a party was not afforded adequate due process at the agency level (s*ee Zenith Electronics Corp. v. United States*, 12 CIT 932, 699 F. Supp. 296 (1988) (*aff'd*, 884 F.2d 566

(Fed. Cir. 1989) (enjoining Commerce from amending dumping margin where, *inter alia*, evidence suggested that plaintiff was not provided an opportunity to express its views on the errors before the agency)); and have indicated that a correction might be disallowed if the procedure were to cause unnecessary delay or expense to one of the parties (*see NTN*, 587 F. Supp.2d at 1316 (giving consideration to the court's "obligations to prevent unfairness to any party and to avoid unnecessary delay or expense.") (citing USCIT Rule 1)).

### B.

In this action, the ministerial nature of the error is apparent from the record. In the *Preliminary Results*, the Department noted its decision to grant a CEP offset to Ehwa and Shinhan as a collapsed entity, 70 Fed. Reg. 77141, and it is undisputed that no party challenged the CEP offset. However, in the *Final Results*, the CEP offset was omitted from the margin calculations without either notation in the decision itself or discussion of the issue in the Decision Memorandum. In contrast, when Commerce (after receiving comments disputing the issue) changed its decision to collapse Ehwa and Shinhan and instead treated them as separate entities, it included in the Decision Memorandum nearly six pages of discussion on the matter. Decision Mem., 46-52. That the CEP offset was omitted without explanation mitigates strongly toward the conclusion that the omission was inadvertent, particularly when none of the interested parties disputed the preliminary grant of it, and where the failure to explain a decision to exclude it would have been improper. Accordingly, the court finds that the evidence supports the conclusion that the omission of the CEP offset was unintentional and hence a "ministerial error" pursuant to the broad definition of that term set forth in 19 C.F.R. § 351.224(f).

Although DSMC argues that the error is not ministerial, its argument is more accurately characterized as a disagreement with the manner in which the Department chose to correct the error, *i.e.*, that the decision to allow a CEP offset for Ehwa and Shinhan as separate entities is not supported by substantial evidence of record. However, that point goes to the merits of the determination, which are not currently before the court. The only question at issue here is whether the Department's omission of the CEP offset in the *Final Results* was an unintentional, ministerial error.

DSMC next argues that the court should deny the motion because the defendant "has not shown that good cause exists for the Court to grant its request" and notes that the Department's correction "would have no effect on whether critical circumstances are established . . . ." Def-Int's Opp'n at 2. This argument is misplaced. As discussed *supra*, the courts are very much in favor of correcting ministerial errors where possible, and the clear Congressional preference for accuracy in antidumping determinations strengthens that tendency. Accordingly, if it is determined that an error is, in fact, ministerial, the burden of persuasion is essentially on the opponent of the motion to show good cause why the motion should *not* be granted by showing that prejudice or some other fundamental unfairness would result, and none has been shown here. DSMC's "balance of hardships" argument is similarly irrelevant because such a test is simply not part of the determination.

DSMC asserts further that, "given the Department's flawed analysis," allowing correction of the errors would not increase the accuracy of the dumping margins, but only distort them further, and that delaying the ultimate adjudication of the issues serves only to prejudice the

DSMC members.  Def-Int's Opp'n at 5.  These arguments go to the merits of the case and must be

rejected in the context of the instant motion to correct ministerial errors.  Moreover, given that the

merits adjudication of this matter must await the outcome of Federal Circuit's decision in *Diamond*

*Sawblades II*, the corrections proposed by the Department will cause no delay whatsoever.

*IV. Conclusion*

In consideration of the foregoing, the court concludes that the Department should be

permitted to issue and publish an amended determination that incorporates the ministerial corrections

set forth in its motion.  Accordingly, in consideration of all papers submitted herein, it is hereby

**ORDERED** that Defendant's Motion for Leave to Publish Amended Final Results Correcting a Ministerial Error, as filed on January 13, 2010, be, and hereby is GRANTED and that the time for correcting the ministerial errors and publishing the amended determination will be within 15 days of the date of this order.  It is further

**ORDERED** that all other proceedings in this case be, and hereby are, STAYED pending issuance of a final and conclusive decision in *Diamond Sawblades Manufacturers' Coalition v. United States*, Slip Op. 09-5, which is now pending appeal at the United States Court of Appeals for the Federal Circuit.

/s/ R. Kenton Musgrave
R.  KENTON MUSGRAVE, Senior Judge

Dated: March 11, 2010
    New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                          Deputy Clerk